150

[No. 75521-3. En Banc.]
Argued March 10, 2005.    Decided December 22, 2005.

*In the Matter of the Detention of* RAYMOND MARSHALL,
*Petitioner.*

152

*David Schultz*, for petitioner.

*Robert M. McKenna, Attorney General,* and *Krista K. Bush, Assistant,* for respondent.

¶1 MADSEN, J. — Petitioner Raymond Marshall challenges a Court of Appeals decision affirming his commitment as a sexually violent predator. He claims that his detention is improper because the State was required to plead and prove a "recent overt act." Marshall also challenges the State's expert's testimony, arguing, among other things, that the psychologist who testified was not licensed to practice in Washington and therefore was not authorized to conduct an evaluation to determine whether he is a sexually violent predator. We affirm the Court of Appeals.

## FACTS

¶2 On November 6, 2000, the State filed a petition seeking to have Mr. Marshall committed as a sexually violent predator pursuant to chapter 71.09 RCW. Marshall has a history of sex offenses, including a conviction pursuant to a plea agreement for child molestation resulting from sexual contact with a six-year-old girl in 1989. This offense was a sexually violent offense, as the term is defined in RCW 71.09.020. At the same time, Mr. Marshall pleaded guilty to communicating with a child for immoral purposes; the offense was committed in 1989, and the victim was an 11-year-old boy. Marshall was sentenced to a 27-month prison term for these offenses and was released in June 1992. Mr. Marshall was convicted in 1992 of felony communication with a minor for immoral purposes, resulting from fondling a nine-year-old girl on August 14, 1992, while he worked as a ride attendant at a county fair. In exchange for his guilty plea on this charge, an additional charge of child molestation was dismissed. Marshall was sentenced to 16 months' confinement and was released in August 1993.

¶3 In 1995, Mr. Marshall attempted to lure two 11-year-old girls to him and stared at the genital area of one of the girls. He was on community placement at the time, with conditions that prohibited him from having contact with minor girls. He received a community placement violation as a result of these acts.

¶4 In 1996, following a jury trial, Mr. Marshall was convicted of third degree rape, the offense for which he was incarcerated at the time the State filed the sexually violent predator petition. This conviction resulted from Marshall's having nonconsensual sexual intercourse with an adult female on November 19, 1995. Although the victim was an adult, she was developmentally disabled and functioned at the level of a 10- to 12-year-old.

¶5 The certification of probable cause included the opinion of a Department of Corrections psychologist that Marshall met the criteria for commitment as a sexually violent predator. Neither the State's petition nor the certificate alleged that Mr. Marshall was confined as a result of a conviction for a sexually violent act or an act that would qualify as a "recent overt act" under RCW 71.09.020(10). Marshall moved to dismiss the petition, arguing that due process required that the State plead and prove a recent overt act. The trial court denied the motion.

¶6 The trial court found that there was probable cause to believe that Marshall was a sexually violent predator and ordered him detained for an evaluation pursuant to RCW 71.09.040(4) before his commitment trial. At the special commitment center, a Washington licensed psychologist conducted the evaluation and prepared a report concluding that Mr. Marshall met the criteria for commitment as a sexually violent predator. The State also obtained an evaluation by another psychologist pursuant to a CR 35 court order. Shortly before the commitment trial was to begin, the trial court granted Mr. Marshall's motion to exclude the evaluation and testimony by this psychologist in light of *In re Detention of Williams*, 147 Wn.2d 476, 55 P.3d 597 (2002), where this court held that CR 35 may not be used to compel a mental examination during pretrial discovery in civil commitment proceedings under chapter 71.09 RCW.

¶7 The State then retained Dr. Amy Phenix, who has been licensed as a clinical psychologist since 1992 in her home state of California. Dr. Phenix specializes in sex offender risk assessment and evaluation. She has con-

ducted over 225 evaluations of individuals under sexually violent predator statutes in California, Washington, and other states.

¶8 Dr. Phenix did not conduct an in-person interview or evaluation of Mr. Marshall. Instead, she reviewed records of Marshall's criminal and psychiatric history, including police reports, legal records, treatment records, juvenile records, psychological and psychiatric evaluations, and medical records. At the commitment trial, which was tried to the judge, Dr. Phenix testified that these are the type of records on which professionals in her field rely when evaluating individuals to determine whether they are sexually violent predators.

¶9 Dr. Phenix determined that Mr. Marshall suffers from multiple mental abnormalities described in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM-IV-TR), a reference relied on by experts. Specifically, she found he suffers from pedophilia, sexual sadism, and paraphilia not otherwise specified (nonconsenting adults or rape-like behavior).[1] In reaching these conclusions, Dr. Phenix also relied on Mr. Marshall's self-reported fantasies and results of phallometric assessment. In addition, Dr. Phenix testified, Marshall suffers from antisocial personality disorder. Dr. Phenix testified that in her opinion Marshall's mental abnormalities made it very likely that he would commit predatory acts of sexual violence in the future if he were not confined in a secure facility.

¶10 The State also called Mr. Marshall as a witness, who admitted to a jail guard that he might pose a risk to children but denied that he would be a danger to children if

---

[1] "Pedophilia" is characterized by "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child . . . (generally age 13 years or younger)." DSM-IV-TR at 572. "Sexual sadism" is characterized by "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving acts (real, not simulated) in which the psychological or physical suffering (including humiliation) of the victim is sexually exciting to the person." DSM-IV-TR at 574. "Paraphilia not otherwise specified" is a catchall category for paraphilias that do not fall within one of the other specified categories. DSM-IV-TR at 576.

released. Additionally, the jail guard testified that he had transported Marshall to the courtroom that day and that during a short conversation, Marshall said that "your children aren't safe." Report of Proceedings (RP) at 229. The State introduced copies of the records of Marshall's conviction for the 1989 child molestation that was a sexually violent offense, as well as copies of the records of Marshall's convictions for other sex-related offenses.

¶11 The trial court determined that Mr. Marshall is a sexually violent predator and entered an order committing him to the custody of the Department of Social and Health Services for placement in a secure facility pursuant to chapter 71.09 RCW. Mr. Marshall appealed, arguing that the State was required to plead and prove a "recent overt act," that Dr. Phenix was not qualified to testify, and that her testimony should have been excluded because she relied on inadmissible hearsay evidence to form her testimony. The Court of Appeals affirmed. *In re Det. of Marshall*, 122 Wn. App. 132, 90 P.3d 1081 (2004). We granted Marshall's petition for discretionary review.

## ANALYSIS

¶12 Mr. Marshall contends that because he was not incarcerated for a sexually violent offense when the sexually violent predator petition was filed, the State was required as a matter of due process to plead and prove beyond a reasonable doubt that he had committed a "recent overt act" in order to commit him as a sexually violent predator. The State maintains that the third degree rape for which Marshall was incarcerated at the time the sexually violent predator petition was filed was a crime that itself qualified as a recent overt act and therefore the State was not required to allege and prove that Marshall had committed a recent overt act.

¶13 The State may file a petition alleging an individual is a sexually violent predator when "it appears that [a] person who at any time previously has been convicted of

a sexually violent offense is about to be released from total confinement." RCW 71.09.030(1). Under RCW 71-.09.020(16), a "sexually violent predator" is one who "suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(8) defines "mental abnormality" which "is tied directly to present dangerousness." *In re Det. of Henrickson*, 140 Wn.2d 686, 692, 2 P.3d 473 (2000). This tie to present dangerousness is constitutionally required, as recognized in *In re Personal Restraint of Young*, 122 Wn.2d 1, 27, 857 P.2d 989 (1993), because due process requires that an individual must be both mentally ill and presently dangerous before he or she may be indefinitely committed. *Accord In re Det. of Albrecht*, 147 Wn.2d 1, 7-8, 51 P.3d 73 (2002).

¶14 Proof of a recent overt act may be required to establish current dangerousness. A "recent overt act" is "any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." RCW 71.09.020(10). However, RCW 71.09.060(1) provides that the State must prove beyond a reasonable doubt that an individual has committed a recent overt act *only if* on the day the petition is filed, the individual was living in the community after release from custody. The statute "unambiguous[ly] direct[s] that the State need not prove a recent overt act when the subject of a sexually violent predator petition is incarcerated on the day the petition is filed." *Henrickson*, 140 Wn.2d at 693.

¶15 Moreover, as we expressly held in *Henrickson*, due process does not require the State to prove a recent overt act "[w]hen, on the day a sexually violent predator petition is filed, an individual is incarcerated for a sexually violent offense, RCW 71.09.020[(15)], or for an act that would itself qualify as a recent overt act, RCW 71.09.020[(10)]." *Henrickson*, 140 Wn.2d at 695; *see Albrecht*, 147 Wn.2d at 8.

¶16 Instead, where the individual is incarcerated on the day the petition is filed, the question is whether the confinement is for a sexually violent act or an act that itself qualifies as a recent overt act. We agree with the analysis in *State v. McNutt*, 124 Wn. App. 344, 350, ¶ 12, 101 P.3d 422 (2004), that the inquiry whether an individual is incarcerated for an act that qualifies as a recent overt act is for the court, not a jury. The court must either determine from the materials relating to the individual's conviction whether the individual is incarcerated for an act that actually caused harm of a sexually violent nature, or it must determine whether the individual was incarcerated for an act that qualifies as a recent overt act under a two step analysis described by the Court of Appeals in *McNutt*: first, an inquiry must be made into the factual circumstances of the individual's history and mental condition; second, a legal inquiry must be made as to whether an objective person knowing the factual circumstances of the individual's history and mental condition would have a reasonable apprehension that the individual's act would cause harm of a sexually violent nature. *Id.*

¶17 That this is a question for the court is demonstrated by our decision in *Henrickson*. There, one of the petitioners, Henrickson, had a history of sexual assaults on young girls and was incarcerated for attempted kidnapping and communicating with a minor—based on abducting a six-year-old girl and showing her a pornographic picture. The other petitioner, Halgren, had a history of sexual related offenses including first degree rape and was incarcerated for unlawful imprisonment of a prostitute. After holding that the State does not have to prove a recent overt act where the individual is incarcerated at the time a sexually violent predator petition is filed for an act that qualifies as a recent overt act, we concluded in each case that the petitioner was incarcerated for an act that constituted a recent overt act. *Henrickson*, 140 Wn.2d at 696 (Henrickson's convictions "would certainly qualify as . . . a recent overt act" and Halgren's conviction "would also qualify as a . . . recent overt act").

■ ¶18 Here, the trial court concluded that the act for which the petitioner was convicted, third degree rape, was a recent overt act based upon the nature of the rape, as alleged in the charging document and proved at the rape trial, and petitioner's history of offenses and mental condition. We agree with the trial court's conclusion. Marshall's history includes numerous incidents of seeking out and molesting young children. He was diagnosed as suffering from pedophilia, sexual sadism, and nonspecified paraphilia. His diagnosis of sexual sadism resulted in part from Marshall's fantasies of molesting and hurting or killing young girls. In light of Marshall's history and mental condition, the third degree rape, which involved non-consensual sex with a developmentally disabled woman who functioned at the level of a 10- or 12-year-old, would create a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person.

¶19 Mr. Marshall's reliance on *Albrecht* and *In re Detention of Broten*, 115 Wn. App. 252, 62 P.3d 514 (2003), is misplaced. In each of these cases, the offenders had been released into the community following total confinement and were then incarcerated again for violating the conditions of community placement. In each case, the court noted that where the offender has not been released from total confinement, due process does not require proof of a recent overt act. *Albrecht*, 147 Wn.2d at 10; *Broten*, 115 Wn. App. at 256.

¶20 Mr. Marshall next argues that Dr. Phenix was not licensed in Washington and therefore was not authorized to perform an evaluation under RCW 71.09.040(4). That statute requires that offenders submit to a sexually violent predator evaluation conducted "by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services." RCW 71.09.040(4). Former WAC 388-880--010(12)(d) (Supp. 2000) defined a "psychologist" in relevant part as "a person licensed as a doctor of psychology under

chapter 18.83 RCW."[2] Under chapter 18.83 RCW, psychologists must obtain a license to practice psychology in this state. RCW 18.83.020. Pursuant to RCW 18.83.082, a psychologist licensed in another state may obtain a temporary permit to practice in Washington state. Here, Dr. Phenix had obtained a temporary permit, but the record does not establish that it was valid at the time she conducted her evaluation of Marshall.[3]

■■ ¶21 But, as the Court of Appeals determined, Dr. Phenix did not conduct an evaluation pursuant to RCW 71-.09.040(4), and therefore whether she was qualified to conduct an evaluation under this statute is not relevant. Rather, her role in Mr. Marshall's commitment trial was as an expert witness. She qualified as an expert witness based on her knowledge, skill, experience, training and education, and her knowledge assisted the trial judge in understanding the evidence and determining the facts at issue, i.e., whether Mr. Marshall suffered from a mental abnormality or personality disorder that made him likely to commit a predatory sexually violent act unless confined. *See* ER 702. RCW 71.09.040(4) simply does not address a psychologist's expert testimony at trial.

■ ¶22 Mr. Marshall also contends, however, that allowing Dr. Phenix to testify contravenes our decision in *Williams*. In *Williams*, the petitioners contended that the State could not obtain court ordered mental evaluations under CR 35 in advance of their sexually violent predator commitment trials. We agreed. *Williams*, 147 Wn.2d at 491. However, Marshall was not compelled to submit to an evaluation by Dr. Phenix, whether under CR 35 or otherwise, and in fact, Dr. Phenix did not interview Marshall in person. Nothing in *Williams* forecloses the type of evaluation conducted by Dr. Phenix or her expert testimony at the commitment trial.

---

[2] WAC 388-880-010 has been amended to define "psychologist" as "a person licensed as a doctor of psychology in this state, or licensed or certified in another state, in accordance with chapter 18.83 RCW."

[3] Dr. Phenix testified that she believed she had a temporary license in Washington but was unsure of its expiration date. RP at 131.

■ ¶23 Next, Mr. Marshall argues that Dr. Phenix's opinion testimony was improperly based on a review of inadmissible hearsay records and violated ER 703 because it was conducted solely for the purpose of litigation.

¶24 ER 703 provides that if "facts or data . . . upon which an expert bases an opinion or inference [are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." The judicial comment to ER 703 notes, however, that an expert opinion should not be permitted "if the expert can show only that he [or she] customarily relies upon such material or that it is relied upon only in preparing for litigation." ER 703 cmt.; see State v. Ecklund, 30 Wn. App. 313, 317-18, 633 P.2d 933 (1981).

¶25 Marshall contends the practice of psychology in Washington is defined by RCW 18.83.010(1), which, he says, contemplates that a psychologist will evaluate, diagnose, and treat based upon the observation of behavior and objective testing and measurement. He argues the definition does not contemplate that a psychologist would base a diagnosis on the records of others. He urges that the diagnostic method used by Dr. Phenix would be used only to prepare to testify in a lawsuit, and her opinion was therefore not admissible under ER 703.

¶26 The statutory definition of the practice of psychology is clearly broader than Mr. Marshall claims.[4] Moreover, Dr.

---

[4] RCW 18.83.010(1) provides:

When used in this chapter:

(1) The 'practice of psychology' means the observation, evaluation, interpretation, and modification of human behavior by the application of psychological principles, methods, and procedures for the purposes of preventing or eliminating symptomatic or maladaptive behavior and promoting mental and behavioral health. It includes, but is not limited to, providing the following services to individuals, families, groups, organizations, and the public, whether or not payment is received for services rendered:

(a) Psychological measurement, assessment, and evaluation by means of psychological, neuropsychological, and psychoeducational testing;

(b) Diagnosis and treatment of mental, emotional, and behavioral disorders, and psychological aspects of illness, injury, and disability; and

Phenix testified that her particular area of expertise is sex offender risk assessment and evaluation of sex offenders. She testified that the documents that she reviewed are of the type that other mental health professionals rely on when evaluating individuals to determine whether they are sexually violent predators. While Marshall objected, he presented no evidence to rebut Dr. Phenix's testimony that the records are of the type reviewed by experts in the field.

¶27 Admission of Dr. Phenix's testimony under ER 703 was proper. *See Young*, 122 Wn.2d at 58 (admission of expert testimony in sexually violent predator commitment trials upheld where the testimony was based on records reasonably relied on by others to diagnose future dangerousness).

¶28 Finally, Marshall contends that Dr. Phenix's testimony should have been excluded because she related inadmissible hearsay as factual assertions. As noted, ER 703 permits an expert to base his or her expert opinion on facts or data that are not otherwise admissible provided that they are of a type reasonably relied on by experts in the particular field. Thus, the rule allows expert opinion testimony based on hearsay data that would otherwise be inadmissible in evidence. *State v. Russell*, 125 Wn.2d 24, 73-74, 882 P.2d 747 (1994); *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 399, 722 P.2d 787 (1986) ("[t]he trial court may allow the admission of otherwise [inadmissible] hearsay evidence and inadmissible facts for the purpose of showing the basis of the expert's opinion"). However, " ' "it does not follow that such a witness may simply report such matters to the trier of fact: The Rule was not designed to enable a witness to summarize and reiterate all manner of inadmissible evidence." ' " *State v. DeVries*, 149 Wn.2d 842, 848 n.2, 72 P.3d 748 (2003) (quoting *State v. Martinez*, 78 Wn. App. 870, 880,

(c) Counseling and guidance, psychotherapeutic techniques, remediation, health promotion, and consultation within the context of established psychological principles and theories.

899 P.2d 1302 (1995) (quoting 3 DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 389, at 663 (1979))).

¶29 At trial, Marshall's counsel objected to admission of facts in the records that Dr. Phenix reviewed as substantive evidence. The trial court sustained the objection, ruling that Dr. Phenix could relate otherwise inadmissible material only for the purpose of explaining the basis for her expert opinion. This ruling was consistent with ER 705, which grants the court discretion to allow the expert to relate hearsay or otherwise inadmissible evidence to the trier of fact to explain the reasons for his or her expert opinion, subject to appropriate limiting instructions. 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 705.4, 705.5 (4th ed. 1999).

¶30 In accord with the trial court's ruling and ER 703 and 705, Dr. Phenix related a number of facts that would have been inadmissible if offered to prove their truth to explain how she reached her conclusions about the likelihood that Mr. Marshall would commit a predatory sexually violent act unless confined. Mr. Marshall contends, however, that Dr. Phenix's testimony rested entirely on inadmissible evidence.[5] We do not agree that the State failed to present any admissible evidence to support the factual bases for Dr. Phenix's testimony. For example, the State introduced the records of Mr. Marshall's prior sex and sex-related offenses, as well as his testimony and that of the jail guard.

¶31 We find no error in allowing Dr. Phenix to relate otherwise inadmissible hearsay to explain the basis for her expert opinion.

## CONCLUSION

¶32 The State was not required to plead and prove that Mr. Marshall committed a recent overt act in order for him

---

[5] Marshall does not, however, address the facts and data that Dr. Phenix relied on in reaching her opinion and explain how all of it constituted inadmissible evidence.

to be committed as a sexually violent predator because at the time the sexually violent predator petition was filed, Marshall was incarcerated for an act that itself constituted a recent overt act. The question whether an individual is incarcerated for an act that itself qualifies as a recent overt act is for the court, not a jury. Further, the trial court did not err in admitting the testimony of the State's expert psychologist, allowing her to base her testimony on otherwise inadmissible evidence, and allowing her to refer to that evidence during her testimony.

¶33 The Court of Appeals is affirmed.

ALEXANDER, C.J., and C. JOHNSON, BRIDGE, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶34 CHAMBERS, J. (dissenting) — I respectfully dissent.

As incarceration of persons is the most common and one of the most feared instruments of state oppression and state indifference, we ought to acknowledge at the outset that freedom from this restraint is essential to the basic definition of liberty in the Fifth and Fourteenth Amendments of the Constitution.

*Foucha v. Louisiana,* 504 U.S. 71, 90, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (Kennedy, J., dissenting). It is our solemn duty to ensure that the State's power to incarcerate is exercised only under the most stringent of standards. This is just as important for civil confinement as for criminal confinement.

¶35 It is bedrock law that a person must be *currently* dangerous to be civilly committed. *In re Pers. Restraint of Young,* 122 Wn.2d 1, 40, 857 P.2d 989 (1993); *see also Foucha,* 504 U.S. at 80. This is not merely a matter of statutory grace; a substantial showing of current dangerousness is required to satisfy due process of law. *See In re Harris,* 98 Wn.2d 276, 284, 654 P.2d 109 (1982).

¶36 Current dangerousness is best established by proving actual recent conduct, rather than through the arcana of propensity evaluations. *See In re Det. of Albrecht,* 147

Wn.2d 1, 11, 51 P.3d 73 (2002); *Harris*, 98 Wn.2d at 284. Thus, as a matter of due process, the State must prove a recent overt act of violence before a man or woman may be civilly committed. *Harris*, 98 Wn.2d at 284; *see also* RCW 71.09.060(1); *Albrecht*, 147 Wn.2d at 11.

¶37 We have, however, relieved the State of the obligation to prove a recent overt act when it seeks to civilly commit as a sex predator a person currently incarcerated and not recently released into the community. *In re Det. of Henrickson*, 140 Wn.2d 686, 697, 2 P.3d 473 (2000); *Young*, 122 Wn.2d at 41. This is because our court once decided that those in prison have had less opportunity to engage in recent acts of predatory violence. *Young*, 122 Wn.2d at 41; *see also* RCW 71.09.020(15).

¶38 Because Raymond Marshall was confined the day the civil commitment petition was filed against him, the State contends its burden of proof is reduced. It no longer has to prove, the State contends, that Marshall committed a recent overt act tending to show he is currently dangerous. Because he was not incarcerated for a crime that is statutorily defined as a sexually violent act, Marshall contends the State was required to prove he was actually incarcerated for a sexually violent offense.

¶39 I agree with Marshall. Due process requires its due, and that means Marshall has a right to demand the State meaningfully prove *to a jury* that he is currently dangerous. Thus, whether his prior crime was actually a sexually violent offense (or recent overt act) should be decided by the trier of fact as a matter of fact, not by a judge as a matter of law.

¶40 Our legislature seems to have been mindful of due process requirements when it drafted the sexually violent predators act, chapter 71.09 RCW. That is why, I suspect, it has required proof beyond a reasonable doubt that the person is a sexually violent predator and why it requires a jury to be unanimous. RCW 71.09.060(1).

¶41 A conviction for rape in the third degree, RCW 9A-.44.060, the crime for which Marshall was incarcerated,

certainly could be a conviction for a sexually violent act. But it is not a "sexually violent offense" enumerated in RCW 71-.09.020(15). Whether it can still provide the predicate for civil confinement will turn on whether it was an act that "either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." RCW 71-.09.020(10). This is properly a question for the finder of fact, and, again, Marshall was entitled to ask a jury to make the decision.

¶42 The issue before this court is not whether Marshall's 1996 conviction for third degree rape *could* be the functional equivalent of a "recent overt act" as defined in RCW 71-.09.020(10). I have no doubt a rational trier of fact could so find. The question before this court is *who* should be asked to so find and how. The answer to this question, I believe, is that the State must go through the exercise of pleading and proving its case before committing a man, even a bad man, to total confinement for what is likely to be the rest of his life. *See generally Humphrey v. Cady,* 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972) (civil commitment is "a massive curtailment of liberty"); *Specht v. Patterson,* 386 U.S. 605, 608, 87 S. Ct. 1209, 18 L. Ed. 2d 326 (1967) (requiring states to observe due process protections before civilly committing sex offenders). In my view, it should.

¶43 The statutes do not dictate the majority's conclusion, and given the very real fact that Marshall could spend the rest of his life confined to the special commitment center based in part on the resolution of this question, we should err on the side of giving generous due process and on the side of entrusting juries to make the call.

¶44 The fact Marshall chose a bench trial does not change the fact he was denied the opportunity to ask the trier of fact to decide a critical question beyond a reasonable doubt.

¶45 Facts found by a neutral fact finder, weighing the arguments of equally motivated opponents with equal op-

portunity to prove and contest facts, are far more reliable than facts asserted by charging documents. An adversarial process promotes reliable outcomes and assures a fair procedure for those for whom conclusions of fact are of life-altering importance. It also gives due weight to the gravity of the questions that must be answered. A jury should be available to decide whether a man is to be totally confined or whether society should be subjected to the risk of another sexual predator walking among us.

¶46 Without our constant vigilance, sexually violent predator proceedings risk becoming, as one of my brethren once observed, "an Orwellian 'dangerousness court.'" *Young,* 122 Wn.2d at 60 (C. Johnson, J., dissenting). It is our solemn duty to protect "our system of ordered liberty guaranteed by the constitution," *id.,* even or especially when it is the most despised among us at risk. "History has proven the grave error in creating special classes of individuals for whom constitutional rights are diminished." *Id.* When the State has created such special classes, we should be especially vigilant to guard the constitution. We are, almost always, literally its last guardians.

¶47 I would reverse and remand to give both parties an opportunity to meaningfully contest the facts underlying the alleged current dangerousness of Marshall before a jury, using the best evidence we have: the actual conduct of the person the State seeks to incarcerate.

¶48 I respectfully dissent.

SANDERS, J., concurs with CHAMBERS, J.