225 P.3d 1028 (2010)
154 Wash.App. 116
In the Matter of the DETENTION OF Harold G. BROWN.
No. 62383-4-I.
Court of Appeals of Washington, Division 1.
January 11, 2010.
*1030 Jennifer M. Winkler, Nielsen Broman & Koch, PLLC, Seattle, WA, for Appellant.
Kristie Barham, Office of the Attorney General, Seattle, WA, for Respondent.
LEACH, J.
¶ 1 Harold Glen Brown appeals his commitment as a sexually violent predator (SVP) under chapter 71.09 RCW. He contends that procedures used by the trial court to determine whether the crime for which he was incarcerated constituted a recent overt act violated his due process rights. We hold no constitutional error occurred and affirm Brown's civil commitment.

Background
¶ 2 Brown has a history of sex offenses, including convictions for child molestation in the first degree and rape of a child in the second degree. In 1990, when Brown was 27 years old, he molested two sisters aged eight and five. At first, Brown admitted molesting the older sister and denied having other victims. But after the younger sister told the authorities that she was also a victim, Brown confessed to molesting both children. In 1991, Brown pleaded guilty to two counts of child molestation in the first degree.
¶ 3 Before sentencing, Brown was released to community custody and underwent an evaluation for a Special Sex Offender Sentencing Alternative (SSOSA). The evaluation process required that Brown disclose his entire offense history and pass a polygraph test.
¶ 4 Brown did not disclose the full extent of his sexual deviancy. He concealed from his evaluators a number of past victims and his current sexual relationship with a 13-year-old girl. Brown eventually got this girl pregnant.
¶ 5 When the authorities learned of Brown's sexual contact with the 13-year-old, he was returned to confinement and sentenced on the child molestation charges. Brown was also convicted of rape of a child in the second degree. While incarcerated, Brown participated in a Sex Offender Treatment Program where he admitted to molesting and raping more than 20 girls between the ages of four and 13.
¶ 6 Brown was released into community supervision in July 2002. Initially, Brown's community corrections officer (CCO) and sex offender treatment provider denied him the right to use computers. Access was eventually granted after Brown made repeated requests for Internet access for employment purposes. Over the course of the next few months, Brown downloaded pornographic images of children from his work computer.
¶ 7 When first confronted about viewing pornographic images, Brown lied. But after repeated questioning by his CCO, he confessed to viewing an adult pornographic video and to downloading pornography with his work computer. Brown was warned that his residence would be searched, at which point he admitted to having nude pictures of children. The video and sexually suggestive photos of children were discovered during the search.
¶ 8 In August 2004, a jury convicted Brown of seven counts of possession of depictions of a minor engaged in sexually explicit conduct. Brown remained incarcerated for these convictions in 2005 when the State petitioned to have him civilly committed as an SVP. The trial court conducted a pretrial hearing to determine whether Brown's convictions for possession of child pornography constituted a recent overt act under former RCW 71.09.020(10) (2006). The trial court determined that Brown's crime was a recent overt act that relieved the State from having to prove a recent overt act at trial. A unanimous *1031 jury subsequently found that Brown was an SVP, and he was civilly committed.
¶ 9 Brown appeals, claiming that the trial court's pretrial procedure denied him due process.

Standard of Review
¶ 10 Whether an act is a recent overt act is a mixed question of law and fact.[1] To resolve questions of mixed law and fact, we apply legal precepts to factual circumstances.[2] Unchallenged factual findings are verities on appeal, and the application of law to those facts is a question of law reviewed de novo.[3]

Analysis
¶ 11 Before reaching Brown's due process arguments, we first respond to the State's contention that Brown failed to preserve for appeal his challenge to the trial court's decision about a recent overt act. RAP 2.5(a)(3) allows an appellate court to refuse to review any claimed error not raised at the trial court below absent a manifest error affecting a constitutional right. Accordingly, an appellant may raise an error for the first time on appeal if he or she demonstrates (1) that the error is manifest and (2) that the error is truly of constitutional dimension.[4] Finally, if a manifest constitutional error has occurred, it is then subject to harmless error analysis.[5]
¶ 12 This test, however, presupposes an error in the first place. And because it would be useless for a court to investigate whether nonexistent error is of constitutional import, we determine whether any alleged error occurred and address the constitutional dimension only if error did occur. Thus, we preview the merits of the claimed constitutional violation to determine whether the argument is likely to succeed.[6]
¶ 13 Brown makes three distinct arguments: (1) the court must conduct an evidentiary hearing before deciding whether the act for which an offender is incarcerated constitutes a recent overt act, (2) the clear and convincing evidence standard applies to this preliminary hearing, and (3) his child pornography possession convictions do not constitute a recent overt act. For reasons explained below, we reject these arguments and find no fault with the trial court's proceedings.
¶ 14 Due process requires that an offender must be both mentally ill and presently dangerous before he or she may be indefinitely committed.[7] When an offender is not incarcerated at the time a commitment petition is filed, present dangerousness is established by proof to the fact finder of a recent overt act.[8] Washington's SVP statute defines a recent overt act as any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.[9]
¶ 15 But due process does not require that the State prove a recent overt act when, on the day the petition is filed, the individual is incarcerated for a sexually violent offense, or for an act that would itself qualify as a recent overt act.[10] Thus, the threshold question is whether the act resulting in confinement is itself a sexually violent act or an act that constitutes a recent overt *1032 act.[11] If the answer is yes, the State need not plead and prove any other recent overt act at trial to provide the defendant with due process. Here, Brown was incarcerated for possession of child pornography at the time the State filed its petition for civil commitment. Thus, the question we must answer is whether the trial court satisfied Brown's due process rights when determining that possession of child pornography, under these facts and circumstances, constitutes a recent overt act.
¶ 16 Our decision in State v. McNutt[12] and our Supreme Court's decision in In re Detention of Marshall[13] establish that the court, not the jury, decides whether the crime resulting in confinement is a recent overt act. Brown has cited no authority to the contrary. Since these cases are dispositive, we review them in detail.
¶ 17 In State v. McNutt, the respondent was a sexually violent offender with a history of offering young boys money, beer, or cigarettes to perform sadistic acts upon him while he masturbated. During community placement, McNutt invited a 14-year-old girl and three young adult males to his home and asked to be their sex slave. McNutt entered an Alford plea[14] to a felony charge of communicating with a minor for immoral purposes. Before his release, the State petitioned to civilly commit McNutt as an SVP. The trial court determined, without undertaking a factual inquiry on the record, that communicating with a minor was not itself a sexually violent offense but was a recent overt act.
¶ 18 On appeal, we agreed with McNutt that some factual inquiry was required but held that because it is a mixed question of law and fact regarding McNutt's history, that inquiry is for the court and not the jury.[15] We also determined that the recent overt act analysis includes a factual inquiry [to] determine[] the factual circumstances of [the respondent's] history and mental condition, and [a] legal inquiry [to] determine[] whether an objective person knowing those factual circumstances would have a reasonable apprehension of harm of a sexually violent nature resulting from the act in question.[16] After studying the record in McNutt's case, we determined that only one conclusion could be reasonably drawn: McNutt's act of communicating with a minor was a recent overt act.[17]
¶ 19 Marshall was decided five months later. Marshall was incarcerated for third degree rape of a developmentally disabled woman at the time the State filed its SVP petition. Because third degree rape was not statutorily defined as a sexually violent offense, the court had to determine whether the respondent was incarcerated for an act that qualified as a recent overt act. In finding that it did, the Marshall court expressly approved the analysis used in McNutt.[18] The court held that whether an act resulting in confinement is a recent overt act involves a two step analysis:
[F]irst, an inquiry must be made into the factual circumstances of the individual's history and mental condition; second, a legal inquiry must be made as to whether an objective person knowing the factual circumstances of the individual's history and mental condition would have a reasonable apprehension that the individual's act would cause harm of a sexually violent nature.[[19]]
*1033 ¶ 20 These cases make clear that whether the act resulting in confinement constitutes a recent overt act is a mixed question of fact and law decided by first looking into the factual circumstances of the offender's history and mental condition. Next, the trial court assesses whether an objective person with knowledge of those factual circumstances could reasonably apprehend harm of a sexually violent nature from the act resulting in confinement. And, as McNutt and Marshall illustrate, the trial court's role under the factual inquiry prong is not that of a fact finder. Instead, the court need only review facts already established, including those established in the record of the conviction resulting in incarceration. In other words, the original proceeding provided Brown with an opportunity to contest the factual allegations supporting the conviction, and the recent overt act inquiry is not meant to afford Brown a second opportunity to litigate those facts.
¶ 21 Moreover, Brown has failed to demonstrate any prejudice resulting from the denial of an evidentiary hearing. He does not identified any disputed fact relied upon by the trial court to make its decision. As noted below, the only matter in dispute before the trial court was a portion of Brown's diagnosis, a portion not relied upon by the trial court when making its decision.
¶ 22 Brown next contends that Foucha v. Louisiana[20] requires application of the clear and convincing evidence standard to the trial court's preliminary determination of whether the State will be required to prove a recent overt act at trial. Foucha, however, provides no assistance to Brown. In Foucha, the United States Supreme Court affirmed earlier case law requiring the State to show mental illness and present dangerousness by clear and convincing evidence as a necessary prerequisite to civil commitment.[21] Thus, Foucha addresses the ultimate issue of dangerousness at trial, not how a recent overt act must be established.
¶ 23 A similar issue was debated in Marshall, where the dissent argued that Foucha stood for the proposition that the recent overt act inquiry must be decided by a jury as a matter of fact rather than by the court as a matter of law.[22] The majority disagreed and held that the decision was to be made by the court as a matter of law based upon the factual record documenting the prior act and the mental condition of the respondent.[23] Accordingly, the clear and convincing evidence standard applies to the ultimate determination of dangerousness at trial and not to the trial court's preliminary overt act determination.
¶ 24 The additional authorities cited by Brown do not support a different result. In Addington v. Texas, the United States Supreme Court held that the State must prove mental illness and present dangerousness by clear and convincing evidence before an individual can be civilly committed to a mental institution under state law.[24] The court also held that clear and convincing evidence is the minimum standard upon which civil commitments may rest.[25] Like Foucha, the court in Addington addressed the standard of proof courts apply to unresolved factual issues necessary to civilly commit a person involuntarily.
¶ 25 In In re Detention of Turay, our Supreme Court addressed who had the burden of proof at an annual show cause hearing under RCW 71.09.090.[26] Citing Foucha, the court held that due process placed the burden on the State to prove by at least clear and convincing evidence that the individual suffers from a mental illness and is currently dangerous before being recommitted.[27] Similarly, in In re Detention of Thorell, our *1034 Supreme Court affirmed Washington's statutory provision requiring the factual issues of mental illness and present dangerousness be proven beyond a reasonable doubt at the commitment trial.[28] Like Foucha and Addington, these two cases address the quantum of evidence required to resolve factual issues at a commitment trial.
¶ 26 Brown's reliance on In re Detention of Albrecht[29] is similarly misplaced. Albrecht was released to community placement after serving a sentence on a child molestation conviction. Shortly after release, Albrecht was arrested for allegedly violating his community placement conditions by offering two young boys 50 cents to follow him. During confinement for his community placement violation, the State petitioned to commit Albrecht as an SVP. The Supreme Court held that Albrecht's community placement violation did not relieve the State of its due process obligations to prove a recent overt act.[30] It reasoned that [t]o relieve the State of the burden of proving a recent overt act because an offender is in jail for a violation of the conditions of community placement would subvert due process.[31] The court explained, Albrecht could have easily been jailed for consuming alcohol, going to a park, or moving without permission, each of which would have been a violation of the terms of his community placement but none of which would amount to a recent overt act.[32] Because Albrecht is concerned with when the State must prove a recent overt act and because the State proved a recent overt act in this case, Albrecht is inapposite.
¶ 27 Applying the Marshall analysis to this case, the record contains the following undisputed facts. Brown was confined at the time the petition was filed for a criminal offense, possession of child pornography. Before this offense, Brown had pleaded guilty to child molestation in the first degree. While undergoing an SSOSA evaluation, Brown engaged in sexual contact with a 13-year-old girl. After he was charged with rape of a child in the second degree, he waived his right to a jury trial and stipulated to the evidence against him. The trial court found Brown guilty. Brown has a history of lying about his offenses, suffers from pedophilia,[33] and has an offense cycle that begins with viewing adult pornography, then barely legal pornography, and culminating in child pornography just before actually targeting a child. Brown also admitted that at the time of his arrest for viewing child pornography he was so far into his offense cycle that he was beyond the point of self-intervention.
¶ 28 Brown did not challenge these facts during his pretrial hearing. Instead, Brown focused on a disagreement between the State and the defense expert over whether Brown's admission that he was in his offense cycle indicated a future probability of re-offense. Brown erroneously asserts that expert opinions are facts. Opinions are not facts. And as explained above, the factual inquiry engaged in by the court is not that of a trier of fact. The time and place to contest disputed expert opinion testimony is at the civil commitment trial where the State must prove present dangerousness beyond a reasonable doubt.[34]
¶ 29 We conclude that Brown's pornography possession convictions were a recent overt act that relieved the State from proving a recent overt act at trial. Knowledge of Brown's history and mental condition could create a reasonable apprehension of harm of *1035 a sexually violent nature in the mind of an objective person.

Conclusion
¶ 30 The trial court does not act as a fact finder when deciding whether the act resulting in incarceration is a recent overt act. Therefore, due process does not require that the trial court conduct an evidentiary hearing to make this preliminary determination. As explained above, the clear and convincing evidence standard does not apply to this determination. Finally, the record supports the trial court's determination that Brown's possession of child pornography was an overt act because knowledge of Brown's history and mental condition could create a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person. We affirm.
WE CONCUR: APPLEWICK and GROSSE, JJ.
NOTES
[1] In re Det. of Marshall, 156 Wash.2d 150, 158, 125 P.3d 111 (2005).
[2] In re Det. of Anderson, 166 Wash.2d 543, 555, 211 P.3d 994 (2009)
[3] In re Det. of Anderson, 166 Wash.2d at 555, 211 P.3d 994.
[4] State v. O'Hara, 167 Wash.2d 91, 98, 217 P.3d 756 (2009).
[5] O'Hara, 167 Wash.2d at 98, 217 P.3d 756.
[6] State v. Nguyen, 165 Wash.2d 428, 433-34, 197 P.3d 673 (2008).
[7] Marshall, 156 Wash.2d at 157, 125 P.3d 111.
[8] In re Det. of Albrecht, 147 Wash.2d 1, 7-8, 51 P.3d 73 (2002).
[9] Former RCW 71.09.020(10).
[10] In re Det. of Henrickson, 140 Wash.2d 686, 695, 2 P.3d 473 (2000) (citations omitted).
[11] State v. McNutt, 124 Wash.App. 344, 349, 101 P.3d 422 (2004).
[12] 124 Wash.App. 344, 101 P.3d 422 (2004).
[13] 156 Wash.2d 150, 125 P.3d 111 (2005).
[14] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[15] McNutt, 124 Wash.App. at 350, 101 P.3d 422.
[16] McNutt, 124 Wash.App. at 350, 101 P.3d 422.
[17] McNutt, 124 Wash.App. at 350-51, 101 P.3d 422.
[18] Marshall, 156 Wash.2d at 158, 125 P.3d 111 (The court must either determine from the materials relating to the individual's conviction whether the individual is incarcerated for an act that actually caused harm of a sexually violent nature, or it must determine whether the individual was incarcerated for an act that qualifies as a recent overt act under a two step analysis described by the Court of Appeals in McNutt.).
[19] Marshall, 156 Wash.2d at 158, 125 P.3d 111.
[20] 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).
[21] Foucha, 504 U.S. at 80, 112 S.Ct. 1780.
[22] Marshall, 156 Wash.2d at 165, 125 P.3d 111 (Chambers, J., dissenting).
[23] Marshall, 156 Wash.2d at 158, 125 P.3d 111.
[24] 441 U.S. 418, 433, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
[25] Addington, 441 U.S. at 433, 99 S.Ct. 1804.
[26] 139 Wash.2d 379, 423, 986 P.2d 790 (1999).
[27] Turay, 139 Wash.2d at 423-24, 986 P.2d 790.
[28] 149 Wash.2d 724, 745, 72 P.3d 708 (2003).
[29] 147 Wash.2d 1, 51 P.3d 73 (2002).
[30] Albrecht, 147 Wash.2d at 10-11, 51 P.3d 73.
[31] Albrecht, 147 Wash.2d at 10-11, 51 P.3d 73.
[32] Albrecht, 147 Wash.2d at 11, 51 P.3d 73.
[33] Both the State and the defense expert agreed on this, though they disagreed on other aspects of Brown's diagnosis.
[34] For instance, to civilly commit a person under the SVP statute, the State must still prove beyond a reasonable doubt that the respondent suffers from a mental abnormality or personality disorder that makes him `[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility.' In re Det. of Audett, 158 Wash.2d 712, 727, 147 P.3d 982 (2006) (emphasis added) (alteration in original) (quoting former RCW 71.09.020(7)).