271 P.3d 259 (2011)
In re the DETENTION OF Gary Eugene CHERRY, Appellant.
No. 40096-1-II.
Court of Appeals of Washington, Division 2.
September 13, 2011.
Oliver Ross Davis, Washington Appellate Project, Seattle, WA, for Petitioner.
Brooke Elizabeth Burbank, Assistant Attorney General, Seattle, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Gary Eugene Cherry appeals the trial court's refusal to sign an agreed order granting *260 him unconditional release from commitment as a sexually violent predator (SVP) and the trial court's subsequent refusal to grant him a jury trial on the issue of unconditional release. We reverse and remand for entry of an order granting Cherry unconditional release.

FACTS
¶ 2 Cherry was civilly committed as an SVP in 1999. At the beginning of 2003, he was conditionally released from the Special Commitment Center (SCC) to a less restrictive alternative on McNeil Island and, at the end of 2003, he was conditionally released to his home in Shelton.
¶ 3 The trial court granted Cherry additional "step-downs" in his supervision, based on his progress in conditional release. Appellant's Motion for Discretionary Review (AMDR), Appendix A, at 9. After evaluating Cherry in 2007, as part of the annual review process, SCC psychologist Dr. James Manley concluded that he no longer met the definition of an SVP and was entitled to unconditional release. The State retained an evaluator who recommended that Cherry stay on conditional release, however, and after a stipulated bench trial, the court found that Cherry continued to meet the SVP definition and that conditional release remained in his best interest. Nevertheless, the court reduced Cherry's restrictions and granted him the ability to travel within the state without notifying his community corrections officer.
¶ 4 Dr. Manley subsequently completed Cherry's 2008 annual review and again recommended his unconditional release. He made the same recommendation in Cherry's 2009 annual review report. His 2009 report concluded as follows:
In sum, Mr. Cherry's ongoing and successful management of his individualized dynamic risk, his persistent adherence to court and therapeutic conditions, and his overall rigorous application of his Relapse Prevention Plan indicate Mr. Cherry has reduced his risk below the "more likely than not" statutory threshold. Mr. Cherry's endeavors have reduced his risk level to be safely discharged from civil commitment.
. . . .
It is the opinion of the undersigned that Mr. Cherry does not currently meet the definition of a sexually violent predator. Based on his consistent community deportment, continued treatment participation, and continued sobriety, Mr. Cherry has reached treatment readiness to be granted an unconditional release from his present commitment status.
AMDR, Appendix A, at 9. The psychological staff at the SCC who oversees treatment progress, the SCC superintendent, and Cherry's sex offender treatment provider also recommended Cherry's unconditional release in 2009 based on his progress in treatment and his successful self-management in the community for six years.
¶ 5 Pursuant to the SCC superintendent's authorization, Cherry petitioned the court for unconditional release. In his petition, he asked the court to set a trial, noting that he had retained the expert services of Dr. Richard Wollert. When the matter proceeded to a hearing, however, the parties presented the court with an agreed order dismissing the SVP petition and granting Cherry unconditional release. In that order, the State stipulated that based on the SCC's 2007, 2008, and 2009 annual reviews, as well as the opinions of Cherry's sex offender treatment provider, it could not prove beyond a reasonable doubt that Cherry continues to meet the criteria for commitment as an SVP.
¶ 6 The trial court refused to accept the stipulation and denied Cherry's petition for unconditional release as well as his request for a jury trial on the matter. The court did not find probable cause to believe that Cherry's condition had so changed that he no longer meets the definition of an SVP, concluding instead that Cherry still meets the definition beyond a reasonable doubt. The written findings supporting those conclusions relied heavily on the actuarial test results listed in Dr. Manley's 2008 and 2009 reports, which showed Cherry as having a high risk to reoffend.
¶ 7 We granted the parties' joint motion for discretionary review and find one issue dispositive.

*261 ANALYSIS
¶ 8 On appeal, the parties join in arguing that under CR 41, the trial court was obligated to grant their stipulated order of dismissal. The SVP statute, chapter 71.09 RCW, is civil in nature. In re Det. of Williams, 147 Wash.2d 476, 488, 55 P.3d 597 (2002). The civil rules "govern the procedure in the superior court in all suits of a civil nature," with exceptions set out in CR 81. CR 1; Williams, 147 Wash.2d at 488, 55 P.3d 597. CR 81(a) states that "[e]xcept where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings." Proceedings under chapter 71.09 RCW are special proceedings within the meaning of CR 81. In re Det. of Mathers, 100 Wash.App. 336, 340, 998 P.2d 336 (2000). Accordingly, where inconsistencies exist between the civil rule governing court-ordered mental examinations and the SVP statutes, the statutes control. Williams, 147 Wash.2d at 491, 55 P.3d 597. Similarly, civil rule limits on a court's contempt authority are inconsistent with statutory contempt authority and thus inapplicable to SVP proceedings. In re Det. of Young, 163 Wash.2d 684, 692-93, 185 P.3d 1180 (2008). But, because there is no inconsistency between the civil rule governing summary judgment and the SVP statutes, we affirmed the pretrial dismissal of a conditional release petition in Mathers, 100 Wash.App. at 340-41, 998 P.2d 336.
¶ 9 CR 41(a) governs the timing, circumstances, and conditions of a voluntary dismissal of an action before its full adjudication on the merits. 10 David E. Breskin, Washington Practice: Civil Procedure Forms and Commentary § 41.1, at 21 (2000 ed. supp. 2010-11). CR 41(a)(1)(A) states that "any action shall be dismissed" when the parties "so stipulate in writing."[1] "Where the language of the rule makes clear that the court `shall' grant the motion for dismissal, the court has no discretion under the [r]ule to do otherwise." 10 D. Breskin, supra, § 41.1, at 21; see also Spokane County v. Specialty Auto & Truck Painting, 153 Wash.2d 238, 250, 103 P.3d 792 (2004) (parties may stipulate to dismissal under CR 41 at any time; trial court has no discretion to deny the requested relief) (Sanders, J., concurring and dissenting in part).
¶ 10 In assessing any inconsistency between CR 41(a)(1)(A) and the SVP statutes, a brief overview of the SVP commitment and review process is necessary. At the initial commitment proceeding, the State must prove beyond a reasonable doubt that the individual suffers from a mental disorder and is dangerous. In re Det. of Moore, 167 Wash.2d 113, 124, 216 P.3d 1015 (2009). Because SVP commitment is indefinite, the due process requirement that a detainee be mentally ill and dangerous is ongoing. Moore, 167 Wash.2d at 125 n. 3, 216 P.3d 1015; see also In re Det. of Mitchell, 160 Wash.App. 669, 677, 249 P.3d 662 (2011) (final disposition does not occur until the SVP is unconditionally released). Each year, the Department of Social and Health Services (DSHS) must examine SVP detainees to determine whether they continue to meet the standard for commitment. RCW 71.09.070; In re Det. of Ambers, 160 Wash.2d 543, 548, 158 P.3d 1144 (2007). The resulting report is served on the trial court that conducted the original commitment hearing, the detainee, and the prosecuting attorney. RCW 71.09.070; Ambers, 160 Wash.2d at 548, 158 P.3d 1144. If the secretary of DSHS or a designee determines that a detainee is no longer mentally ill or dangerous, the secretary must authorize him to petition for release. Ambers, 160 Wash.2d at 548, 158 P.3d 1144; see RCW 71.09.090(1). Such a petition is filed with the court and served on the prosecuting agency responsible for the initial commitment; in this case, the attorney general. RCW 71.09.090(1),.020(11); In re Det. of Cherry, 105 Wash. App. 1026, 2001 WL 285763 (2001). Upon receipt of a DSHS-authorized petition, the court must order a full evidentiary hearing within 45 days. RCW 71.09.090(1). Either party may demand that the hearing be a jury trial. RCW 71.09.090(3)(a). The State may challenge the DSHS recommendation and in *262 doing so must prove, beyond a reasonable doubt, that a detainee who seeks unconditional release continues to meet the SVP definition. Ambers, 160 Wash.2d at 548-49, 158 P.3d 1144; RCW 71.09.090(3)(a), (c).
¶ 11 Here, the SCC superintendent authorized Cherry to petition for unconditional release under RCW 71.09.090(1). There is no language addressing the possibility of an agreed dismissal in this or the other SVP statutes. But our commissioner in granting discretionary review raised the possibility of an inconsistency between CR 41 and RCW 71.09.090, which contemplates a trial even after DSHS has determined that the detainee is eligible for release. The State responds that there is nothing inconsistent about the statutory procedure for ordering a new trial and a separate process by which the prosecuting agency can agree to dismiss an action when there is insufficient evidence to proceed.
¶ 12 The State's argument is persuasive. The purpose of the hearing that follows a DSHS-authorized petition for unconditional release is, presumably, to protect the prosecuting agency's ability to challenge that release. See Ambers, 160 Wash.2d at 548-49, 158 P.3d 1144. At such a hearing, the State must prove that a detainee continues to satisfy the SVP criteria. RCW 71.09.090(3)(c). But if the State accepts the DSHS recommendation and concludes that it cannot meet that burden, it is fully consistent with RCW 71.09.090 for the State to stipulate to dismissal. Forcing the State to proceed when it cannot prove the case would be inconsistent with other SVP statutes, due process, and the prosecutor's ethical obligation to prosecute only cases it can prove. See RCW 71.09.060(1) (allowing State to move for dismissal if jury cannot reach unanimous verdict on SVP commitment); In re Det. of Young, 122 Wash.2d 1, 27, 857 P.2d 989 (1993) (due process allows for involuntary commitment only for those who are both mentally ill and dangerous); RPC 3.8(a) (prosecutor shall refrain from prosecuting charge known to lack probable cause).
¶ 13 We hold that the trial court erred in refusing to accept the agreed order dismissing the State's SVP petition and granting Cherry unconditional release. Because of this holding, we need not consider whether the trial court erred in denying Cherry a recommitment trial. Accordingly, we reverse and remand for entry of an order dismissing the civil commitment petition and granting Cherry unconditional release.
I concur: JOHANSON, J.
QUINN-BRINTNALL, J. (dissenting).
¶ 14 I disagree with the majority opinion for several reasons. I first object to the majority's decision to reverse on the basis of a court rule that the parties never cited or argued below. Although there is case law allowing us to affirm on any basis the record supports, I see none authorizing us to reverse on a ground never presented to the trial court.
¶ 15 More importantly, however, I agree with our commissioner that a summary dismissal of a sexually violent predator (SVP) petition under CR 41 is inconsistent with RCW 71.09.090, which contemplates a trial even after the Department of Social and Health Services (DSHS) has determined that an SVP detainee is eligible for release.[2] The statute expressly provides that in such an instance, the court "shall within forty-five days order a hearing." RCW 71.09.090(1).
¶ 16 When the legislature uses the word "shall" in a statute, it imposes a mandatory duty. State v. G.A.H., 133 Wash.App. 567, 577, 137 P.3d 66 (2006) (citing State v. Bartholomew, 104 Wash.2d 844, 710 P.2d 196 (1985) (Bartholomew III)). The holding in Bartholomew III is particularly instructive here. The Washington Supreme Court affirmed Bartholomew's aggravated first degree murder conviction but invalidated his death sentence because of the unconstitutional admission of evidence about his previous *263 criminal activity. State v. Bartholomew, 98 Wash.2d 173, 176, 654 P.2d 1170 (1982) (Bartholomew I), vacated, 463 U.S. 1203, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983).[3] On remand, the prosecutor decided not to seek the death penalty, reasoning that the Supreme Court's holding deprived the State of the evidence needed to rebut the mitigating circumstances and that a sentence of life without parole was appropriate. Bartholomew III, 104 Wash.2d at 846, 710 P.2d 196. The trial judge questioned the prosecutor's right to decline to seek the death penalty, and the Supreme Court granted review. Bartholomew III, 104 Wash.2d at 846, 710 P.2d 196. The Supreme Court examined statutory language stating that "`a special sentencing proceeding shall be held'" once a defendant is convicted of aggravated first degree murder if notice of such a proceeding was filed and served, and it also took note of language stating that the trial court "`shall impanel a jury'" to decide the proper penalty after a remand on the death penalty question. Bartholomew III, 104 Wash.2d at 847-48, 710 P.2d 196 (quoting RCW 10.95.050(1), (4)). The court interpreted the word "shall" as mandatory: "The general rule is that the word `shall' is presumptively imperative and operates to create a duty rather than conferring discretion." Bartholomew III, 104 Wash.2d at 848, 710 P.2d 196. Consequently, the prosecutor had no discretion to determine unilaterally that the lesser penalty should be imposed. Bartholomew III, 104 Wash.2d at 848, 710 P.2d 196.
¶ 17 RCW 71.09.090(1) expressly provides that the trial court shall hold a hearing on a DSHS-authorized unconditional release petition, thus creating an inconsistency between the statute and any application of CR 41 that would mandate dismissal of the underlying SVP petition without a trial. In light of this inconsistency, the specific statute governs and requires a hearing on whether Gary Cherry is eligible for unconditional release. See CR 81. The only error that occurred below was the trial court's failure to order such a hearing.
¶ 18 The trial court treated the proceeding before it as a show cause hearing and found no probable cause to support a full hearing on whether Cherry still meets the SVP definition. But a show cause hearing is required only if a detainee petitions for release without DSHS authorization. RCW 71.09.090(2)(a); In re Det. of Ambers, 160 Wash.2d 543, 548, 158 P.3d 1144 (2007); 13 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure, § 5416 at 572-74 (3d ed. 2004). At a show cause hearing, the trial court determines whether probable cause exists to warrant a full hearing on the issue of unconditional release. RCW 71.09.090(2)(a); In re Ambers, 160 Wash.2d at 548, 158 P.3d 1144. The State must present prima facie evidence establishing that the detainee continues to be an SVP. RCW 71.09.090(2)(b). If the State cannot or does not prove this prima facie case, there is probable cause to believe continued confinement is not warranted and the matter must be set for the full evidentiary hearing described in RCW 71.09.090(3). RCW 71.09.090(2)(c); In re Det. of Petersen, 145 Wash.2d 789, 798, 42 P.3d 952 (2002).
¶ 19 Because DSHS authorized Cherry's petition for unconditional release, there was no probable cause issue before the court. But even if there had been, the State's position that Cherry no longer meets the necessary criteria constituted probable cause to believe that continued confinement was unwarranted, thus the trial court was required to grant a full hearing on the matter. RCW 71.09.090(3); see In re Det. of Elmore, 162 Wash.2d 27, 37, 168 P.3d 1285 (2007) (in determining whether probable cause exists, court may not weigh evidence but must decide whether the facts, if believed, establish that the person is no longer an SVP).
¶ 20 I would hold that both the law and the evidence required the trial court to grant Cherry's request for a jury trial on his unconditional release petition. Although an evaluation of the evidence is a matter for the jury, my examination of the record reveals *264 evidence sufficient to present an issue of fact on Cherry's continuing status as an SVP.[4]
¶ 21 I dissent and would reverse and remand for a jury trial on the issue of whether Cherry is entitled to unconditional release from his SVP confinement.
NOTES
[1] The rule exempts class actions and shareholder derivative actions from this mandate. CR 41(a)(1).
[2] I also note that generally CR 41 motions are intended to apply to pre-adjudication proceedings and that Cherry has already been found by a jury to be an SVP and the trial court has previously entered valid commitment orders based on that finding. CR 59 and CR 60 address the vacation and modification of judgments, not CR 41.
[3] In State v. Bartholomew, 101 Wash.2d 631, 683 P.2d 1079 (1984) (Bartholomew II), the Supreme Court affirmed its earlier holding after the United States Supreme Court vacated Bartholomew I and remanded.
[4] Most notably, the reports cited by the parties rely on the continuation of the status quo in Cherry's life. The reports repeatedly mention how Cherry's wife and best friend assist him in maintaining a life structure sufficient to control his predatory conduct and suggest that as long as this assistance continues, Cherry is unlikely to reoffend. The reports do not suggest that alone, Cherry is unlikely to reoffend.