FILED
COURT OF APPEALS
DIVISION II

2014 APR 24 AM 10: 46

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Detention of:

JACK LECK II,

                Petitioner.

No. 42573-4-II

ORDER GRANTING MOTION
TO PUBLISH

Respondent State of Washington filed a motion to publish our March 4, 2014 opinion in this matter. Appellant Jack Leck filed a response opposing this motion. After review of the records and files herein, we grant the motion.

It is ORDERED that the final paragraph that reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.

It is further ORDERED that the opinion is now published.

DATED: this __24TH__ day of __APRIL__, 2014.

PANEL: Jj. Penoyar, Worswick, Bjorgen.

FOR THE COURT:

_____
Chief Judge

FILED
COURT OF APPEALS
DIVISION II

2014 MAR -4 AM 9:19

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Detention of:

JACK LECK II,

                Petitioner.

No. 42573-4-II

UNPUBLISHED OPINION

PENOYAR, J.P.T.[1] — Jack Leck II appeals a jury verdict determining him to be a sexually violent predator (SVP). Leck contends that his right to due process was violated when (1) the jury was instructed on an alternative means of proving his SVP status that was not alleged in the petition, (2) he was not allowed to appear in person at a reconsideration hearing addressing the recent overt act requirement, and (3) the State's expert witness was allowed to refer to hearsay in expressing his opinion about Leck's SVP status. Leck also argues that the State had no authority to file an SVP petition against him in 2008 under the law then in effect and that applying the 2009 law retroactively violated his right to due process. We hold that the State had authority to file the petition under both versions of the law, as explained in *In re Detention of Durbin*, 160 Wn. App. 414, 248 P.3d 124, *review denied*, 172 Wn.2d 1007 (2011). We hold further that the jury instruction alleging that Leck suffered from a personality disorder did not constitute manifest constitutional error enabling Leck to raise this issue for the first time on appeal, that the trial court did not err by refusing to continue a reconsideration hearing addressing an issue of law, and that the State's expert appropriately referred to the evidence supporting his opinion. We affirm Leck's SVP commitment.

---

[1] Judge Joel Penoyar is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

FACTS

I.     FACTUAL BACKGROUND

Leck was convicted in 1984 in Alaska of second degree sexual abuse of a minor and second degree attempted sexual abuse of a minor. For purposes of Washington's SVP laws at chapter 71.09 RCW, these two convictions amount to "sexually violent offenses."[2] Leck was released on parole for these offenses in July 1996. After being in and out of confinement for various parole violations, Leck was unconditionally released in September 2002.

In April 2003, Leck applied for a membership at the YMCA in Bremerton, Washington. A YMCA employee, aware that Leck was a sex offender in Alaska, contacted Bremerton police. Having been informed by Leck's family[3] when Leck was released in 2002 that he might try to enter the Bremerton YMCA, the police contacted the address Leck had left there; the address was for a charitable organization at which Leck had begun volunteering a week earlier. The police searched the organization's computer to which Leck had had access during that week, discovering numerous images downloaded during that time of minors engaged in sexually explicit conduct. Leck was arrested and later convicted in Kitsap County Superior Court of 46 counts of possession of depictions of a minor engaged in sexually explicit conduct.

---

[2] RCW 71.09.020(17) defines "sexually violent offense."

[3] Leck's family lived in the Bremerton area at this time.

2

## I. PROCEDURAL BACKGROUND

In April 2007, shortly before Leck completed serving his sentence for the Kitsap County convictions, the State filed a petition in Thurston County alleging that Leck was an SVP.[4] Leck was transported first to the Thurston County jail and then, after a probable cause finding under RCW 71.09.040, to the Special Commitment Center on McNeil Island to await his commitment trial.

In May 2008, before Leck's trial, the Washington Supreme Court held that an SVP petition was improperly filed in Thurston County where the alleged SVP had committed sexually violent offenses outside Washington as well as offenses that were not sexually violent in Clark County, Washington. *In re Det. of Martin*, 163 Wn.2d 501, 504–05, 182 P.3d 951 (2008). In view of *Martin*, the State moved to dismiss the Thurston County petition against Leck and—at the request of the Kitsap County prosecutor—filed a petition against Leck in Kitsap County in July 2008.[5]

---

[4] "'Sexually violent predator' means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). This definition has remained unchanged since 1995. *See* LAWS OF 1995, ch. 216, §1.

[5] RCW 71.09.030 governs filing SVP petitions. The 1995 version of the statute was in effect when the State filed the petition against Leck in Thurston County. The legislature amended this version of the statute in 2008, but this amendment merely made one technical correction to the statute that is immaterial to our analysis here. *See* LAWS OF 1995, ch. 216, § 3; LAWS OF 2008, ch. 213, § 12. The 2008 version of the statute was in effect when the State refiled its petition against Leck in Kitsap County. The current version of the statute reflects the legislature's substantive amendments in 2009. *See* LAWS OF 2009, ch. 409, § 3.

The Kitsap County petition was based on consulting psychologist Dale Arnold's 2006 evaluation of Leck in which Arnold diagnosed Leck with pedophilia.[6] As grounds for filing the petition, the State alleged that Leck had a mental abnormality—namely, pedophilia—but did not allege any personality disorder.

Leck moved to dismiss the petition in December 2008 for lack of jurisdiction and probable cause, arguing that he was unlawfully detained at the time the State filed the petition in Kitsap County. Relying on *In re Detention of Keeney*, 141 Wn. App. 318, 330, 169 P.3d 852 (2007), the trial court concluded that an unlawful detention under a criminal proceeding does not divest the court of its power to process an SVP petition, and so the court denied Leck's motion in May 2009.

Then, in October 2010, the State moved for a ruling that, as a matter of law, Leck's 2003 convictions for possession of depictions of minors engaged in sexually explicit conduct qualified as a recent overt act, which would relieve the State of its burden to prove a recent overt act at trial. Attached to the State's motion was an update to Arnold's evaluation based on his personal interview with Leck in September 2010. In the updated evaluation, Arnold diagnosed Leck with a personality disorder that predisposed him to commit criminal sexual acts. At no point, however, did the State amend the petition to include this personality disorder as grounds for the petition.

---

[6] Leck refused an interview with Arnold in 2005 for purposes of Arnold's initial evaluation of Leck; as a result, Arnold based his evaluation on a review of records alone.

Treating the State's recent-overt-act motion as one for partial summary judgment, the trial court denied the motion, pointing to conflicting expert opinion on Leck's mental condition. The State moved for reconsideration. At the reconsideration hearing, with Leck present telephonically, the trial court vacated its previous ruling and granted the State's motion, ruling that Leck's 2003 conviction qualified as a recent overt act.

After Leck's first trial ended in a mistrial, he was retried. At the end of that second trial, the court instructed the jury as follows:

> To establish that Jack Leck, II is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:
> (1) That Jack Leck, II has been convicted of a crime of sexual violence, namely the Alaska offense of Sexual Abuse of a Minor in the Second Degree and/or Attempted Sexual Abuse of a Minor in the Second Degree;
> (2) That Jack Leck, II suffers from a mental abnormality *or personality disorder* which causes serious difficulty in controlling his sexually violent behavior; and
> (3) That this mental abnormality or personality disorder makes Jack Leck, II likely to engage in predatory acts of sexual violence if not confined to a secure facility.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict that Jack Leck, II is a sexually violent predator.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one or more of these elements, then it will be your duty to return a verdict that Jack Leck, II is not a sexually violent predator.

Clerk's Papers (CP) at 1580 (emphasis added). Additional instructions defined both "mental abnormality"[7] and "personality disorder."[8] Leck did not object to any of these instructions.

After the jury returned a verdict finding that the State had proved beyond a reasonable doubt that Leck was an SVP, the court ordered him committed to the Special Commitment Center. Leck appeals.

## ANALYSIS

I.      AUTHORITY TO FILE THE PETITION

Leck first argues that the State did not have authority to file a petition against him under the law in effect in 2008. Leck further argues that retroactively applying the law as amended in 2009—under which the State would have had authority to file the petition—would deny him due process. But in a recent case with analogous facts, we held that the State had authority under the 2008 law to file the SVP petition in question. *Durbin*, 160 Wn. App. at 429. We also held in *Durbin* that applying the 2009 law retroactively, which the legislature had clearly intended, did

---

[7] Instruction 6 read:

> "Mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit criminal sexual acts to a degree that makes the person a menace to the health and safety of others.
> "Volitional capacity" means the power or capability to choose or decide.

CP at 1582.

[8] Instruction 7 read:

> "Personality disorder" means an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has onset in adolescence or early adulthood, is stable over time and leads to distress or impairment.

CP at 1583.

6

not violate due process. 160 Wn. App. at 431. Accordingly, the State was not precluded from filing the petition against Leck under either version of the law.

## II. INSTRUCTION ON UNCHARGED ALTERNATIVE

Leck argues next that his statutory and due process right to notice was violated because the trial court instructed the jury on an alternative means (personality disorder) not mentioned in the petition alleging that Leck was an SVP. The State responds that Leck waived this argument by not challenging instruction 4, the "to commit" instruction, at trial. Leck argues that he may raise this issue for the first time on appeal under *In re Personal Restraint of Brockie*, 178 Wn.2d 532, 309 P.3d 498 (2013).

In *Brockie*, the Supreme Court explained that failing to properly notify a defendant of the nature and cause of the accusation of a criminal charge is a constitutional violation. 178 Wn.2d at 536 (citing U.S. CONST. amend VI; WASH. CONST. art. I, § 22; *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)). The *Brockie* court explained further that when a defendant claims for the first time on appeal that the jury was instructed on an uncharged alternative means of committing a crime, the reviewing court should apply the line of cases beginning with *State v. Severns*, 13 Wn.2d 542, 125 P.2d 659 (1942). *Brockie*, 178 Wn.2d at 537. This case law stands for the proposition that it is error for a trial court to instruct the jury on an uncharged alternative means in a criminal case and that, on appeal, it is the State's burden to prove that the error was harmless. *Brockie*, 178 Wn.2d at 536 (citing *Severns*, 13 Wn.2d at 548; *State v. Bray*, 52 Wn. App. 30, 34-35, 756 P.2d 1332 (1988)). The error of offering an uncharged means as a basis for a criminal conviction is presumed prejudicial and is harmless only "if 'in subsequent instructions the crime charged was clearly and specifically defined to the jury.'" *Bray*, 52 Wn. App. at 34-35 (quoting *Severns*, 13 Wn.2d at 549); *see also State v. Doogan*, 82 Wn. App. 185, 189, 917 P.2d

7

155 (1996) (error of offering uncharged means as a basis for conviction is prejudicial if the jury might have convicted the defendant under the uncharged alternative).

To commit a person as an SVP, the State must prove that he suffers from a mental abnormality or personality disorder. *In re Det. of Post*, 170 Wn.2d 302, 309-10, 241 P.3d 1234 (2010) (citing RCW 71.09.020(18)). "'[M]ental abnormality' and 'personality disorder' are two distinct means of establishing the mental illness element in SVP cases." *In re Det. of Halgren*, 156 Wn.2d 795, 811, 132 P.3d 714 (2006). Here, the State did not allege in the SVP petition that Leck suffered from a personality disorder, but instruction 4 informed the jury that it could find that Leck was an SVP if it found that he suffered from a mental abnormality or a personality disorder.

While tacitly conceding that error occurred, the State argues that neither *Brockie* nor the *Severns* line of cases applies here. As stated, those cases describe the rights of criminal defendants in criminal prosecutions. *Brockie* relied on the Sixth Amendment as well as article I, section 22 and the *Kjorsvik* decision in stating that failing to properly notify a defendant of the nature and cause of the accusation of a criminal charge is a constitutional violation. 178 Wn.2d at 536-37. The Sixth Amendment and article I, section 22, expressly refer to criminal prosecutions, and *Kjorsvik* stands for the proposition that all essential elements of a crime must be included in a charging document. 117 Wn.2d at 97.

Washington courts have repeatedly held that SVP proceedings are civil and not criminal, and they have added that the rights afforded to criminal defendants under the Sixth Amendment and article I, section 22 do not attach to SVP petitioners. *In re Det. of Strand*, 167 Wn.2d 180, 191, 217 P.3d 1159 (2009); *In re Det. of Ticeson*, 159 Wn. App. 374, 377, 246 P.3d 550 (2011), *abrogated on other grounds, State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012). Instead, SVP

petitioners must rely on the guaranty of "fundamental fairness" provided by the due process clause. *Strand*, 167 Wn.2d at 191.

Consequently, to raise his claim of instructional error for the first time on appeal, Leck must show that the error violated this due process guaranty of fundamental fairness and that he was prejudiced as a result. RAP 2.5(a)(3); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011).

Due process is a flexible concept, requiring "'such procedural protections as the particular situation demands.'" *Sherman v. State*, 128 Wn.2d 164, 184, 905 P.2d 355 (1995) (quoting *Mathews v. Eldrige*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). At its core is the right to notice and the opportunity to be heard, but its minimum requirements depend on what is fair in a particular context. *In re Det. of Stout*, 159 Wn.2d 357, 370, 150 P.3d 86 (2007); *Sherman*, 128 Wn.2d at 184. In determining what process is due in a given context, particularly where SVP proceedings are concerned, courts employ the *Mathews* test, which balances: (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures. *Mathews*, 424 U.S. at 335; *Stout*, 159 Wn.2d at 373.

As stated, Leck argues that the instruction informing the jury that it could find he was an SVP based on the uncharged "personality disorder" alternative violated his due process right to notice. In applying the *Mathews* test to this claim, we recognize that Leck has a significant interest in his physical liberty. As to the second factor, we do not see that trying Leck on the personality disorder alternative risked an erroneous deprivation of that liberty.

We are guided to this conclusion, in part, by CR 15(b), which provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The rule adds that the failure to formally amend the pleadings "does not affect the result of the trial of these issues." CR 15(b); *Green v. Hooper*, 149 Wn. App. 627, 636, 205 P.3d 134 (2009). Under CR 15(b), "[w]here evidence raising issues beyond the scope of the pleadings is admitted without objection, the pleadings will be deemed amended to conform to the proof." *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 766-67, 733 P.2d 530 (1987).

The civil rules "govern the procedure in the superior court in all suits of a civil nature," with the exceptions set out in CR 81. CR 1; *In re Det. of Williams*, 147 Wn.2d 476, 488, 55 P.3d 597 (2002); *In re Det. of Cherry*, 166 Wn. App. 70, 74, 271 P.3d 259 (2011). CR 81(a) states that "[e]xcept where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings." Proceedings under chapter 71.09 RCW are special proceedings within the meaning of CR 81. *Cherry*, 166 Wn. App. at 74 (citing *In re Det. of Mathers*, 100 Wn. App. 336, 340, 998 P.2d 336 (2000)).

RCW 71.09.030 governs the information that must be contained in an SVP petition, but there is no statute in chapter 71.09 RCW that discusses the amendment of such petitions. Consequently, our review of whether Leck consented to and thereby had notice of his trial on an uncharged alternative is governed by CR 15. *See In re Det. of McLaughlin*, 100 Wn.2d 832, 849, 676 P.2d 444 (1984) (applying CR 15 to involuntary commitment proceeding). In determining whether the parties consented to the trial of an unpleaded issue, we consider the record as a whole. *Mukilteo Ret. Apartments, LLC v. Mukilteo Investors L.P.*, 176 Wn. App. 244, 257, 310 P.3d 814 (2013).

During closing argument in Leck's first trial, the State informed the jury that it had to find that Leck suffered from a mental abnormality or a personality disorder to determine that he was an SVP. The State asserted that Leck suffered from a mental abnormality and added that "the other diagnosis that's not in dispute in this case is antisocial personality disorder." 2/28/11 Report of Proceedings (RP) (Feb. 28, 2011) at 1232. The defense conceded that the evidence showed that Leck "may have an antisocial personality disorder" and asserted that the "big issue" was whether Leck suffers from a mental abnormality or personality disorder. RP (Feb. 28, 2011) at 1253.

During Leck's second trial, the State sought to allow its expert, Dale Arnold, to refer to information regarding Leck's molestation of his sister and her daughter to support the diagnosis of antisocial personality disorder and pedophilia. The defense responded that there was no disagreement about the personality disorder diagnosis, since both Arnold and Richard Wollert, the defense expert, agreed that Leck suffers from antisocial personality disorder. Defense counsel referred to the jury in adding that "[t]he diagnosis has been made. . . . They're going to learn that he has an antisocial personality disorder." RP (Aug. 1, 2011) at 161. After the trial court observed that both experts had clearly concluded that Leck has an antisocial personality disorder, it limited Arnold's testimony about his sister's allegations.

During his testimony, the State questioned Arnold about the "mental abnormalities and personality disorders" part of the SVP definition. RP (Aug. 8, 2011) at 221. Arnold responded that Leck suffers from the mental disorders of pedophilia and antisocial personality disorder, with both conditions supporting his commitment as an SVP. On cross examination, Leck's attorney asked about the personality disorder diagnosis, and Arnold replied, "[W]hen I say antisocial personality disorder and pedophilia, that's the mental abnormality and the personality

11

disorder that drive the behavior." RP (Aug. 8, 2011) at 374. Defense counsel then asked whether a personality disorder would compel a person to commit a crime.

Wollert testified for the defense that the fact that Leck suffers from antisocial personality disorder does not mean that he has a mental abnormality.

During closing argument, the State asserted that the diagnosis that "everybody agrees with" is antisocial personality disorder. RP (Aug. 15, 2011) at 1097. Defense counsel responded that while Leck might have antisocial personality disorder, he was not incapable of making choices about whether to commit additional crimes. On rebuttal, the State again explained that the case was about whether Leck has a mental abnormality or personality disorder that causes him serious difficulty in controlling his sexually violent behavior.

There were no objections to the testimony or arguments cited above. Leck clearly received notice of the State's intent to allege that he suffered from a mental abnormality or a personality disorder; indeed, he conceded the latter allegation in an attempt to limit unfavorable testimony. As a result, the State's failure to formally amend its petition to include the personality disorder alternative did not risk an erroneous deprivation of Leck's liberty. The pleadings were deemed amended when Leck defended against the allegation that he suffers from a personality disorder without objection. There would be no value in retrying the case following a formal amendment of the petition. The second *Mathews* factor clearly weighs in the State's favor.

The third *Mathews* factor also favors the State, which has a substantial interest in protecting the community from sexual predators. It would be costly and burdensome, as well as meaningless, to give Leck a third opportunity to raise the same defense he used in the prior two trials. Under the due process clause, notice must be "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The purpose of notice having been served in this case, we see no due process violation. Accordingly, we decline to address Leck's claim of instructional error further.[9]

III.    RECENT OVERT ACT RECONSIDERATION HEARING

Leck argues here that the trial court violated his due process right to be present when it denied his motion to continue the recent overt act reconsideration hearing so that he could attend the hearing in person.

Due process requires that, before indefinitely committing a person to a secure facility, a jury must find beyond a reasonable doubt that he is both mentally ill and presently dangerous. *In re Det. of Marshall*, 156 Wn.2d 150, 157, 125 P.3d 111 (2005). When a person is not incarcerated at the time the State files the commitment petition, due process requires the State to prove present dangerousness with evidence of a recent overt act. *In re Det. of Lewis*, 163 Wn.2d 188, 193-94, 177 P.3d 708 (2008). A recent overt act is "any act, threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act."[10] RCW 71.09.020(12).

The due process requirement of proving dangerousness may be satisfied by the person's prior conviction when the petition is filed while the offender is incarcerated for a prior act that

---

[9] Leck's claim that his statutory right to notice was violated is also waived under RAP 2.5(a).

[10] The minor changes made to this definition after the State filed its petition against Leck do not affect our analysis here. *See* former RCW 71.09.020(10) (2006); *Durbin*, 160 Wn. App. at 426.

would itself qualify as a recent overt act. *In re Det. of Hendrickson*, 140 Wn.2d 686, 695, 2 P.3d 473 (2000). Whether the act resulting in a conviction underlying the alleged SVP's confinement is a recent overt act is a question of law for the trial court, not a question of fact to be decided by the jury. *Marshall*, 156 Wn.2d at 158.

The trial court initially denied the State's motion to treat Leck's 2003 convictions for possession of child pornography, for which he was confined when the SVP petition was filed, as a recent overt act as a matter of law. When the State moved for reconsideration, the court held a hearing at which Leck was present telephonically. Defense counsel moved for a continuance because Leck wanted to attend the hearing in person, but the trial court denied that motion after explaining that its decision would be based on the existing record and not additional testimony. The court added that if Leck wanted to submit further information, it would consider that request at the end of argument.

The State argues that the trial court did not err by denying Leck's motion to continue a hearing at which purely legal issues were considered. *See State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974) (whether to grant continuance is within trial court's discretion; denial is disturbed only if accused has been prejudiced and/or result likely would have differed had continuance been granted). A defendant has the right to be present at proceedings where his presence has a reasonably substantial relationship to the fullness of his opportunity to defend against the charge. *In re Det. of Morgan*, 161 Wn. App. 66, 74, 253 P.3d 394 (2011), *review denied*, 177 Wn.2d 1001 (2013). A defendant does not have a right to be present during a discussion of purely legal matters, or where his presence would be useless. *Morgan*, 161 Wn. App. at 74.

14

The trial court must determine whether an individual is incarcerated for an act that qualifies as a recent overt act. *Marshall*, 156 Wn.2d at 158. When the act resulting in confinement has not caused harm of a sexually violent nature, an adjudication of the recent overt act question requires both a factual and legal inquiry. *Marshall*, 156 Wn.2d at 158; *State v. McNutt*, 124 Wn. App. 344, 350, 101 P.3d 422 (2004). The factual inquiry determines the circumstances of the alleged SVP's history and mental condition, and the legal inquiry determines whether an objective person knowing those factual circumstances would reasonably apprehend that the act resulting in his current confinement would cause harm of a sexually violent nature. *Marshall*, 156 Wn.2d at 158. The court's role under the factual inquiry prong is not that of a fact finder; the court need only review facts already established, including those established in the record of the conviction resulting in incarceration. *In re Det. of Brown*, 154 Wn. App. 116, 125, 225 P.3d 1028 (2010). The original criminal proceeding provides an individual with an opportunity to contest the factual allegations supporting the conviction, and the recent overt act inquiry is not meant to provide a second opportunity to litigate those facts. *Brown*, 154 Wn. App. at 125.

The trial court noted here that a motion for reconsideration is generally decided on the basis of the motion submitted. The court requested argument, however, because it had questions about how to apply the two-part test outlined in *Marshall* to the record before it. Following argument, the court noted that it was relying only on uncontroverted facts in making its ruling. The trial court concluded that based on the record in the case and the material filed in support of the motion for reconsideration, the facts of Leck's 2003 conviction constituted an act or acts that could create a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person who knows of Leck's history and mental condition.

15

Leck now argues that the trial court relied on disputed facts in granting reconsideration of its recent overt act ruling, including the fact that he had a mental condition that predisposed him to commit acts of a sexually violent nature, that he was searching for pornography sites on a state-owned computer in 2001, and that he applied for membership at the Bremerton YMCA to meet children. Leck alleges further that when he made statements to the police at the time of his 2003 arrest to which the court's findings referred (i.e., that he "had a problem" and was "trying so hard to stay away from this"), he did not mean he had a problem staying away from child pornography. CP at 767.

Assuming that the issues were as Leck now frames them,[11] he does not show that his presence was required at the hearing or that the trial court erred by denying his motion to continue that hearing. Leck had the opportunity to speak during the hearing and to offer additional evidence following argument at the hearing. Although he consulted with his attorney during the hearing, he offered no additional materials. The trial court did not err by denying the motion for a continuance and by holding the reconsideration hearing while Leck was present telephonically.

III. BASIS FOR EXPERT OPINION

Finally, Leck claims that his due process right to cross examination was violated when Arnold relayed a prejudicial out-of-court statement from Leck's sister without Leck having the opportunity to cross examine her about her motive and bias.

---

[11] It does not appear that the trial court considered anything but the undisputed facts before it: Leck's access to pornographic websites, his YMCA application, and his statements to the police at his arrest.

16

During Arnold's testimony, and before he referred to facts from the record, the court orally instructed the jury as follows:

Dr. Arnold is about to testify regarding information contained in file records he reviewed about Mr. Leck, which is part of the basis for his opinion. You may consider this testimony only in deciding what credibility and weight should be given to Dr. Arnold's opinion. You may not consider it as evidence that the information relied upon by the witness is true or that the events described actually occurred.

RP (Aug. 8, 2011) at 243.

Arnold then testified about Leck coming to Bremerton after his 2002 release and accessing child pornography on the internet.

And after doing that for a couple days and saturating himself in the child pornography, he then went to get a membership at the YMCA. That's really important to me because that's how he found his last victim was at the YMCA in Anchorage.

RP (Aug. 8, 2011) at 263.

Leck testified during his direct and redirect testimony that he applied to the Bremerton YMCA so he could use its shower facilities. On rebuttal, Arnold answered as follows when asked about the significance of Leck's application to the Bremerton YMCA:

I think it's quite significant for a couple of reasons.
One reason is because it's very clear that he had obtained victims for child molestation in the past at the YMCA.
And the other reason I think it's particularly important, is because that's how he was really caught in 2003 is because his sister knew that he had this pattern of contacting YMCAs, and she informed local law enforcement to watch out for him.

RP (Aug. 15, 2011) at 1043. Leck's attorney made a hearsay objection, and the trial court excused the jury so that it could hear argument on the objection. The State argued that the court had given a limiting instruction about Arnold's testimony and that he was entitled to rely on facts in the record to support his opinion about the significance of Leck's YMCA application. Leck's

attorney responded that the testimony was too prejudicial, but the court overruled the objection because the fact at issue was part of the basis for Arnold's expert opinion.

The trial court later gave the jury a written limiting instruction stating in part as follows:

> When Dr. Arnold/Dr. Wollert testified, I informed you that some information was admitted as part of the basis for his opinions, but may not be considered for other purposes. You must not consider this testimony as proof that the information relied upon by the witness is true. You may use this testimony only for the purpose of deciding what credibility or weight to give the witness's opinion.

CP at 1579.

ER 703 permits an expert to base his opinion on facts that are not otherwise admissible if they are of a type reasonably relied on by experts in the particular field. *Marshall*, 156 Wn.2d at 162. "Thus, the rule allows expert opinion testimony based on hearsay data that would otherwise be inadmissible in evidence." *Marshall*, 156 Wn.2d at 162. In addition, ER 705 grants the trial court discretion to allow the expert to relate hearsay or otherwise inadmissible evidence to the trier of fact to explain the reasons for his expert opinion, subject to appropriate limiting instructions. *Marshall*, 156 Wn.2d at 163; 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE §§ 705.4, 705.5 (5th ed. 2007).

In an SVP trial, experts may rely on psychological reports and the criminal history of an SVP detainee in testifying. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 58, 857 P.2d 989 (1993). In referring to Leck's sister's statement, Arnold was drawing from information in the 2003 Kitsap County presentence report to which he had referred in evaluating Leck in 2006.

Arnold testified appropriately, and the trial court gave a limiting instruction to which the defense did not object. We reject Leck's attempt to transform this evidentiary issue into one of constitutional magnitude. Furthermore, we observe that during the deposition played for the

42573-4-II

jury, Leck admitted to molesting his sister when she was a child, stated that she had wrongfully accused him of molesting her children, and added that she was jealous of his relationship with their father. This testimony provided ample basis for Leck to argue that his sister was biased and had a motive to lie. We see no error in the court's ruling regarding the scope of Arnold's testimony.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.P.T.

We concur:

Worswick, C.J.

Bjorgen, J.

19